FILED
2019 Sep-23 AM 10:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ] | |
| Plaintiff, ] | |
| v. ] | 4:18-cv-00501-ACA |
| DAVID SCOTT DASE, doing business ] as Advance Tooling, et al., ] | |
| Defendants. ] | |

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for summary judgment filed by Plaintiff United States (doc. 45), Defendant Rachel Kleinatland (doc. 47), and Defendant David Scott Dase, doing business as Advance Tooling (doc. 49).

A person's failure "to pay any tax" after the government's demand for payment creates "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The government may enforce the lien by requesting that the court order a judicial sale of that property. *Id.* § 7403(c); *United States v. Rodgers*, 461 U.S. 677, 680 (1983).

In this case, it is undisputed that the government has obtained a default judgment against Mr. Dase for unpaid taxes. (Doc. 45-2 at 3; *see also United States v. Dase*, case no. 4:16-cv-01957-KOB, Doc. 13 (M.D. Ala. Sept. 27, 2017)). As a

result, the government requests that the court order the sale of property that it contends Mr. Dase owns. (*See* Doc. 21 at 4). The parties agree that Mr. Dase has an interest in the property at issue, but they dispute how much of an interest. The government contends that Mr. Dase owns the property in full; Mr. Dase and Ms. Kleinatland contend that each of them has a one-half interest.

The government seeks summary judgment on its own claims that Mr. Dase owns the property in full and that it is entitled to seek a forced sale of the property under § 7403. (Doc. 45). Ms. Kleinatland seeks partial summary judgment on the government's claim that Mr. Dase owns the property in full, and requests that the court either enter an order preventing the government from foreclosing on her interest in the property, or order the government to compensate her for the loss of her use of the whole property. (Doc. 47). Mr. Dase seeks partial summary judgment on the government's claim that he owns the property in full, and requests a finding that the government cannot enforce its lien against the property. (Doc. 49).

As the court will discuss in more detail below, under Alabama's intestacy laws, the undisputed evidence establishes that Mr. Dase and Ms. Kleinatland each have a one-half interest in the land. Accordingly, the court **DENIES** the government's motion for summary judgment. The court **GRANTS IN PART** Mr. Dase's and Ms. Kleinatland's motions for partial summary judgment and **ENTERS SUMMARY JUDGMENT** in their favor and against the government on

the government's claim that Mr. Dase owns the property in full. But the court **DENIES IN PART** Mr. Dase's and Ms. Kleinatland's motions for partial summary judgment as to their other requests. The three parties to this case must do further briefing on those issues before the court can rule on them.

I. BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018) (quotation marks omitted). In this case, the parties agree on all of the facts; they disagree only about the legal import of those facts.

Mr. Dase and Ms. Kleinatland's parents, Walter and Anita Dase,[1] jointly owned the property at issue in this case, each with a right of survivorship. (Doc. 45-3; *see also* Doc. 47-1 at 16–17). Mr. Dase and his wife have lived on the property continuously since the mid-2000s, while Ms. Kleinatland has lived elsewhere. (Doc. 47-1 at 17, 23, 36). In 2004, Walter and Anita Dase entered into a lease sale contract with Mr. Dase. (Doc. 45-5). Mr. Dase agreed to make monthly payments of $677.51 to his parents until he had paid $63,703.03, and his parents agreed that once he had paid in full, "the rent paid under this Lease shall be considered a payment for

---

[1] Because Walter, Anita, and Scott Dase all share a last name, the court will refer to the defendant, Scott Dase, as "Mr. Dase," and it will refer to his parents, Walter and Anita Dase, by their full names.

said property, and [they] shall make and execute a warranty deed conveying said property to [Mr. Dase]." (*Id.* at 1–2).

Mr. Dase made each monthly payment directly to the mortgagee of the property. (Doc. 47-1 at 30–31). While Mr. Dase was making the promised payments, Anita Dase died, followed several years later by Walter Dase. (Doc. 47-1 at 29–31). After Walter Dase died, Ms. Kleinatland produced a handwritten document signed by "W Dase," which stated: "All possessions belonging to myself or my passed wife Anita will be split and distributed between Scott [Dase] and Rachel [Kleinatland]. These possessions are at the farm," the farm being the property at issue in this case. (Doc. 55-1).

Mr. Dase and Ms. Kleinatland did not open a probate estate for either of their parents' estates (*see* Doc. 47-1 at 34), but Mr. Dase continued to make mortgage payments directly to the mortgagee. (*Id.* at 30, 32). He completed the payments required under the sale lease contract in 2012 and paid off the mortgage on the property in July 2018. (*See* Doc. 45 at 4 ¶ 10; Doc. 45-6; Doc. 45-7; Doc. 49 at 4 ¶ 10; Doc. 47-1 at 30–31, 67).

In October 2017, the government obtained a default judgment against Mr. Dase in the amount of $293,114.93 for federal employment taxes, federal unemployment taxes, and a federal civil penalty, plus statutory fees and interest. (Doc. 45-2 at 3; *see also United States v. Dase*, case no. 4:16-cv-01957-KOB,

4

Doc. 13 (M.D. Ala. Sept. 27, 2017)). Mr. Dase has not satisfied that judgment, although the parties dispute whether he has made any payments toward the judgment. (*See* Doc. 45-2 at 4). In March 2018, the government filed this lawsuit against Mr. Dase and Ms. Kleinatland, along with several other defendants who have been dismissed. (Docs. 1, 18, 34).

After Mr. Dase paid off the mortgage on the property, the government filed an amended complaint, seeking an order that Mr. Dase owns the property, that the government's tax liens be foreclosed on his interest in the property, that the property be sold under 26 U.S.C. § 7403, and that the proceeds of the sale be distributed to the government and Defendants in accordance with the priority of their claims or interests. (Doc. 21 at 4).

## II. DISCUSSION

In deciding cross-motions for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Fort Lauderdale Food Not Bombs*, 901 F.3d at 1239. To avoid any confusion about the standard applicable to each motion, the court will address the government's motion first, followed by Mr. Dase's and Ms. Kleinatland's motions.

1. The Government's Motion for Summary Judgment

The government contends that Mr. Dase holds equitable title to the entire property because (1) the evidence shows that Walter and Anita Dase intended to convey the property to Mr. Dase but died before they could effectuate that intent, or alternatively (2) the sale lease contract was an executory contract that gave Mr. Dase an equitable interest in the entire property once Walter and Anita Dase signed it. (Doc. 45 at 6–10 & 10 n.5).

As an initial matter, if Alabama's intestacy law controls the outcome of this case, then Mr. Dase and Ms. Kleinatland each inherited a one-half interest in the property. Under Walter and Anita Dase's survivorship warranty deed, Walter Dase took the real property in fee simple after Anita Dase's death. (Doc. 45-3 at 1); *see Fretwell v. Fretwell*, 218 So. 2d 138, 140 (Ala. 1969) ("[A] surviving joint tenant becomes the absolute owner of the property held in joint tenancy upon the death of the contenant, free of the claims of the heirs, because the survivor does not acquire title through the deceased but by virtue of the deed."). The parties agree that Walter Dase later died intestate with two surviving children: Mr. Dase and Ms. Kleinatland.[2] (*See* Doc. 21 at ¶ 14; Doc. 47 at 2 ¶ 6; Doc. 49 at 5).

---

[2] The document that Mr. Dase left does not qualify as a will under Alabama law. *See* Ala. Code § 43-8-131.

In Alabama, if a decedent leaves no surviving spouse,[3] the estate passes "[t]o the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally." Ala. Code § 43-8-42(1). "Real estate passes immediately to the heirs upon the death of the intestate." Ala. Code § 28-9-203(c)(1). Thus, when Walter Dase died, the real property passed immediately to Mr. Dase and Ms. Kleinatland as tenants in common, each with a one-half interest in the property. *See id.* §§ 28-9-203(c)(1), 43-8-42(1); *Ex parte Arvest Bank*, 219 So. 3d 620, 628 (Ala. 2016); *Clayton v. Clayton*, 75 So. 3d 649, 654 (Ala. Civ. App. 2011) ("[T]enants in common are not considered to own the entirety of the parcel, as in a joint tenancy; rather, each tenant in common owns an undivided part of the parcel.").

The government does not quarrel with that analysis, but contends that because Mr. Dase entered a sale lease contract with his parents before their deaths and fully performed all of his obligations under that contract after their deaths, in equity he is the sole owner of the property, effectively preempting the application of Alabama's intestacy statute. (Doc. 45 at 6–8). In support of that argument, the government points to the Supreme Court's decision *Wadsworth v. Hannah*, 431 So. 2d 1186 (Ala. 1983). The court finds the *Wadsworth* decision distinguishable.

---

[3] Although Walter Dase left a surviving spouse, she has disclaimed all interest in the property. (*See* Doc. 36).

In *Wadsworth*, a landowner promised that he was going to convey parcels of land to two couples who were living on those parcels. 431 So. 2d at 1187. In exchange, the couples provided "valuable services" for the landowner. *Id.* at 1187–88. The landowner had an attorney prepare deeds for each parcel but died before he could sign the deeds. *Id.* at 1188. His heir refused to convey the parcels of land to the couples, who then filed suit seeking title to realty. *Id.* The Alabama Supreme Court stated that "a court of equity treats as done that which ought to have been done to carry into effect the intention of the parties" and held that the couples had been "vested with equitable title to the property." *Id.* at 1189.

In *Wadsworth*, the couples had already performed all of the promised services and the landowner had prepared the deeds before he died; only his untimely death prevented the conveyance of the property. *Wadsworth*, 431 So. 2d at 1188–89. By contrast, in this case, Mr. Dase had not yet performed all of his obligations under the contract before his parents' deaths. The government has not presented any evidence from which the court can conclude that Walter Dase intended to convey the property to Mr. Dase before Mr. Dase made all of the payments promised in the sale lease contract. The property still belonged to Walter Dase when he died, so Alabama's intestacy law provides for its disposition.

The government argues in the alternative that the sale lease contract was an executory contract that vested an equitable interest in the property in Mr. Dase as

8

soon as Walter and Anita Dase entered the contract. (Doc. 45 at 8–10 & 10 n.5). The government's only authority for that argument is *Grass v. Ward*, 451 So. 2d 803 (Ala. 1984), but its reliance on *Grass* is misplaced.

In *Grass*, Mabel Ward contracted with the landowner to make mortgage payments on a property in exchange for the landowner's agreement to convey the property to her once she made the final mortgage payment. 451 So. 2d at 804. Ms. Ward made all the mortgage payments but "never procured a deed to the house." *Id.* After Ms. Ward died intestate, both the landowner and Ms. Ward's daughter claimed title to the house. *Id.* The Alabama Supreme Court held that "an equitable conversion occurred when [Ms. Ward] paid off the mortgage and fulfilled the terms of the agreement." *Id.* at 805. In other words, once she fulfilled her obligations under the contract, "the real interest or equitable title passed to Mabel Ward." *Id.* at 806.

In this case, Mr. Dase had not made all of the promised payments under the contract, so he did not take "real interest or equitable title" to the property before Walter Dase's death. The government states that "[i]t is of no moment that Walter and Anita Dase died before conveying the Subject Property to Dase. Rather, the equitable conversion occurred (and thus Dase obtained his interest [in] the Subject Property) when Walter and Anita Dase signed an executory contract that would eventually require them to execute a warranty deed." (Doc. 45 at 10 n.5). But the

9

government provides no authority to support that statement, and as explained above, the *Grass* decision holds only that a party takes her interest in the property after fulfilling all of her own obligations under a contract, not that a party takes her interest as soon as the contract is executed.

The government makes no other arguments supporting its position that Mr. Dase holds the only interest in the property, and under Alabama's intestacy law, Mr. Dase and Ms. Kleinatland inherited a one-half interest in the property. However, in one sentence of its summary judgment brief, the government states that even if Ms. Kleinatland holds an interest in the property, it can still foreclose on the property under 26 U.S.C. § 7403. (Doc. 45 at 11; *see also* Doc. 56 at 6–7). The court will briefly address that assertion.

The Supreme Court has held that the government may seek a forced sale of property in which a delinquent taxpayer holds an interest, even if a third party also holds an interest. *Rodgers*, 461 U.S. at 691–94. In that situation, however, "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and . . . some limited room is left in the statute for the exercise of reasoned discretion." *Id.* at 706. "[W]hen the interests of third parties are involved, . . . a certain fairly limited set of considerations will almost always be paramount." *Id.* at 709–10. The court must consider, among other circumstances, (1) "the extent to which the Government's financial interests would be prejudiced if

it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events, . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors"; (3) "the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompenasation described [earlier in the *Rodgers* opinion]; and (4) "the relative character and value of the non-liable and liable interests held in the property." *Id.* at 710–11.

The government's sole argument is that because Mr. Dase paid the mortgage on the property, Ms. Kleinatland's interest in the property is "minimal" (doc. 56 at 6), and the court "should apportion the sale proceeds so that they be attributed more to Dase's interest than to Kleinatland's" (doc. 45 at 11). The court notes that this argument assumes that the court will find that a forced sale is reasonable under *Rodgers*, but the court cannot make that determination based on this record and this briefing. Even if the court could decide that a forced sale is appropriate here, the government's argument is wholly insufficient to allow the court to apportion Mr. Dase's and Ms. Kleinatland's interests in the property at this point. Accordingly, the court **DENIES** the government's motion for summary judgment.

11

2. Defendants' Motions for Partial Summary Judgment

Both Mr. Dase and Ms. Kleinatland have filed motions for partial summary judgment. (Docs. 47, 49). Although their motions differ slightly, the analysis for each is the same.

Ms. Kleinatland and Mr. Dase seek a summary judgment on the government's claim that Mr. Dase owns the property in full. (Doc. 47 at 3; Doc. 49 at 5–7). Ms. Kleinatland also seeks a summary judgment that her interest in the property prevents a forced sale under 26 U.S.C. § 7403. (Doc. 47 at 3). Mr. Dase seems to request a summary judgment that the government either cannot enforce its tax lien against the property (doc. 49 at 1), or can do so only against his one-half interest in the property (*id.* at 8).

Even taking the facts in the light most favorable to the government, it cannot prevail on its claim that Mr. Dase owns the property in full. As discussed above, the evidence establishes as a matter of law that under Alabama's intestacy statute, Mr. Dase and Ms. Kleinatland each have a one-half interest in the property. Accordingly, the court **GRANTS** Ms. Kleinatland's and Mr. Dase's motions for partial summary judgment with respect to the government's claim that Mr. Dase owns the property in full.

But the court cannot grant Ms. Kleinatland's motion seeking a judgment that her interest in the property can prevent a forced sale under 26 U.S.C. § 7403. As

discussed above, under § 7403 the government may seek a forced sale of property in which a delinquent taxpayer holds an interest, even if an innocent third party also holds an interest in the property. *See Rodgers*, 461 U.S. at 691–94. Accordingly, the court **DENIES** Ms. Kleinatland's motion with respect to that argument.

Finally, Mr. Dase's motion for partial summary judgment begins by asking for a finding that the government cannot enforce its tax lien against the property (doc. 49 at 10), and concludes by asking the court to find that the government's "claim to enforce tax lien can only apply to Mr. Dase's ½ interest" (*id.* at 8). To the extent that Mr. Dase seeks a finding that the government may not foreclose on the property, as discussed above, the court cannot rule on that issue yet. Accordingly, the court **DENIES** Mr. Dase's motion with respect to that request.

### III. CONCLUSION

The court **DENIES** the government's motion for summary judgment. The court **GRANTS IN PART** Mr. Dase's and Ms. Kleinatland's motions for partial summary judgment and **ENTERS SUMMARY JUDGMENT** in favor of Ms. Kleinatland and Mr. Dase and against the government on the government's claim that Mr. Dase owns the property in full. The court **DENIES IN PART** their motions with respect to their arguments that the government cannot foreclose on the property under 26 U.S.C. § 7403.

13

**DONE** and **ORDERED** this September 23, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE