IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | 4:18-cv-00501-ACA |
| | ] | |
| DAVID SCOTT DASE, doing business as Advance Tooling, et al., | ] | |
| | ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION AND ORDER

Before the court is the government's motion for entry of a decree of foreclosure and order of sale. (Doc. 60).

A person's failure "to pay any tax" after the government's demand for payment creates "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The government may enforce the lien by requesting that the court order a judicial sale of that property, even when an innocent third party also holds an interest in the property. *Id.* § 7403(c); *United States v. Rodgers*, 461 U.S. 677, 680 (1983).

Here, the government obtained a default judgment against Defendant David Scott Dase, doing business as Advance Tooling, for unpaid taxes in the amount of $293,114.93, plus any statutory fees and interest that have accrued since September 1, 2017. (Doc. 45-2 at 3; *see also United States v. Dase*, case no. 4:16-cv-01957-

KOB, Doc. 13 (M.D. Ala. Sept. 27, 2017)).  Mr. Dase's only asset is his one-half interest in real property located in Alabama, which he shares as a tenant in common with his sister, Defendant Rachel Kleinatland.  (*See* Doc. 57 at 10).  The government requests that the court order the sale of the real property and apportion the proceeds between it and Ms. Kleinatland.  (*See* Doc. 60 at 5).  Mr. Dase and Ms. Kleinatland oppose a forced sale and request that the court exercise its limited discretion to deny the government's motion.  (Docs. 61, 62).

I.  **BACKGROUND**

The property at issue in this case is a plot of land located at 4624 Greensport Road, Asheville, Alabama 35953.[1] (*See* Doc. 21 at 2–3 ¶ 10; Doc. 45-3 at 1).  More specifically, the property is described as:

> Part of the NE ¼ of NE ¼ of Section 14, Township 14 South, Range 4 East, more particularly described as follows: From a ½ inch rod at the point where the East line of the NE ¼ of NE ¼ intersects the South boundary of the Beaver Valley Road, the point of beginning of property herein described; thence S 1 degrees 01 min. E 562.79 feet to a ½ inch rod; thence S 70 degrees 02 min. W 821.52 feet to a ½ inch rod; thence N 0 degrees 11 min. E 560.35 feet to a ½ inch rod on the South boundary of Beaver Valley Road; thence N 69 degrees 50 min. E along said boundary 820.77 feet to the point of beginning, being a part of the NE ¼ of NE ¼ of Section 14, Township 14 South, Range 4 East, St. Clair County, Alabama.

---

[1] The exact size of the lot is unclear.  Mr. Dase testified that it is "[s]even acres, something like that."  (Doc. 45-1 at 23).  The government contends—without any supporting evidence—that the property is a five acre lot.  (*See* Doc. 60 at 5).

(Doc. 45-3 at 1).

This court has previously found that Mr. Dase and Ms. Kleinatland each have a one-half interest in the property, which they inherited by intestacy from their father. (Doc. 57 at 12–13). Although they each hold a one-half interest on the property, only Mr. Dase and his wife live on the property. (Doc. 47-1 at 17, 23, 36). Ms. Kleinatland has not lived on the property since the 1980s, when she was a child. (*Id.* at 36). Mr. Dase has made all of the mortgage payments on the property since 2004, and paid off the mortgage in July 2018. (Doc. 47-1 at 30–32, 34; *see also* Doc. 45 at 4 ¶ 10; Doc. 45-5; Doc. 45-6; Doc. 49 at 4 ¶ 10).

In October 2017, the government obtained a default judgment against Mr. Dase in the amount of $293,114.93 for federal employment taxes, federal unemployment taxes, and a federal civil penalty, plus statutory fees and interest. (Doc. 45-2 at 3); *see also United States v. Dase*, No. 4:16-cv-01957-KOB, Doc. 13 (M.D. Ala. Sept. 27, 2017). Mr. Dase has not satisfied that judgment, although the parties agree that he has made some payments toward the judgment in unspecific amounts. (*See* Doc. 45-2 at 4; Doc. 60 at 5). In March 2018, the government filed this lawsuit against Mr. Dase and Ms. Kleinatland, along with several other defendants who have been dismissed, seeking a forced sale of the property and distribution of the proceeds, to satisfy part of Mr. Dase's tax delinquency. (Docs. 1, 18, 34).

The court declined the government's earlier request to order a forced sale of the property because the record was insufficient to allow the court to determine whether a forced sale was appropriate under these circumstances. (Doc. 57 at 11). The parties have now briefed the issue whether a forced sale of the property to satisfy the government's tax lien is appropriate. (Docs. 60–63).

## II. DISCUSSION

The government has obtained against Mr. Dase a default judgment in the amount of $293,114.93 for federal employment taxes, federal unemployment taxes, and a federal civil penalty, plus statutory fees and interest. *See United States v. Dase*, No. 4:16-cv-01957-KOB, Doc. 13 (M.D. Ala. Sept. 27, 2017). Under 26 U.S.C. § 6321, the government automatically acquires a lien on "all property and rights to property, whether real or personal, belonging to" someone who has failed or refuses to pay a tax after demand. Accordingly, the court **FINDS** that the government has a valid lien against Mr. Dase's interest in the St. Clair County property. And because the government has a valid lien against the property, 26 U.S.C. § 7403(c) permits the court to "decree a sale of such property, . . . and a distribution of the proceeds of such sale."

But "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and . . . some limited room is left in the statute for the exercise of reasoned discretion." *United States v. Rodgers*, 461 U.S. 677, 706

4

(1983).² "[T]he exercise of limited equitable discretion in individual cases can take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." *Id.* at 709. This case involves an innocent third party: Mr. Dase's sister, Ms. Kleinatland, who also owns a one-half interest in the property at issue and opposes the sale of that property.

"[W]hen the interests of third parties are involved, . . . a certain fairly limited set of considerations will almost always be paramount." *Rodgers*, 461 U.S. at 709–10. The court must consider, among other circumstances, (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events, . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors"; (3) "the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation described [earlier in

---

² Mr. Dase and Ms. Kleinatland argue that *Rodgers* is inapplicable because that case related to a different type of interest in property: a homestead interest instead of a tenancy in common. In doing so, they rely on a district court decision that made a similar distinction between property interests. (Doc. 61 at 6; Doc. 62 at 4); *United States v. Jones*, 877 F. Supp. 907, 919 (D.N.J. 1995). The court finds both the distinction and the *Jones* decision unpersuasive. As the Supreme Court held in *Rodgers*, the plain language of § 7403 permits the government to enforce a tax lien against "any property . . . of the delinquent . . . in which he has *any* right, title, or interest." 26 U.S.C. § 7403 (emphasis added); *Rodgers*, 461 U.S. at 691–94.

the *Rodgers* opinion]; and (4) "the relative character and value of the non-liable and liable interests held in the property." *Rodgers*, 461 U.S. at 710–11. In considering those factors, the court must keep in mind that its discretion under § 7403 is limited and that the government has a "paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711.

### 1. First Factor

The first factor enumerated in the *Rodgers* decision is "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." *Rodgers*, 461 U.S. at 710. The government contends that this factor weighs in its favor because "[t]he forced sale value of the Subject Property is approximately $180,000," and although it would receive only half of that amount (the other half being distributed to Ms. Kleinatland), $90,000 would be a substantial payment toward Mr. Dase's tax liability. (Doc. 60 at 5). The government argues that selling anything other than the entire property would be prejudicial because a one-half interest would result in a lower recovery for the government, and there is no evidence that the property actually can be partitioned for sale. (*Id.*). Ms. Kleinatland and Mr. Dase do not dispute the government's assertion that the property as a whole would sell for approximately $180,000, but they contend that the government has not presented

6

sufficient evidence to determine whether a partial sale would be prejudicial. (Doc. 61 at 4–5; Doc. 62 at 5).

Other courts have recognized that "[p]artial interests in property often sell for less than an equivalent pro rata share of the whole property." *United States v. Davis*, 228 F. Supp. 3d 756 (W.D. La. 2017); *see also United States v. Anderson*, No. 08-cv-6426-MAT, 2010 WL 5072958, at *3 (W.D.N.Y. Dec. 10, 2010) ("Courts have held, and common sense dictates, that the sale of a partial interest in property, particularly where the remaining interest is held by someone who resides at the property, will generally yield less than if entire property is sold."). Indeed, in *Rodgers*, the Supreme Court stated: "It requires no citation to point out that interests in property, when sold separately, may be worth either significantly more or significantly less than the sum of their parts." 461 U.S. at 694. And when the property is worth more as a whole, "it makes considerable sense to allow the Government to seek the sale of the whole, and obtain its fair share of the proceeds, rather than satisfy itself with a mere sale of the part." *Id.*

This court agrees with the common sense proposition that attempting to sell Mr. Dase's one-half interest in the property while allowing Ms. Kleinatland to retain her one-half interest would result in a lower price than selling the entire property and dividing the proceeds in half. Thus, attempting a sale of Mr. Dase's interest alone would prejudice the government.

The question of partition of the property, however, is different. No party in this case has presented any evidence about whether the property can be partitioned and, if it can be partitioned, whether that would increase or decrease the value of that share. *See, e.g.*, *Anderson*, 2010 WL 5072958, at *3. Thus, the court cannot determine whether partition of the property would prejudice the government's interest in collecting the delinquent taxes.

2. Second Factor

The second *Rodgers* factor is "whether the third party with a non-liable separate interest in the property would, in the normal course of events, . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Rodgers*, 461 U.S. at 710–11.

The government contends that this factor is neutral because under Alabama law, one tenant in common can force a sale over the opposition of the other tenant in common. (Doc. 60 at 5–6). Mr. Dase and Ms. Kleinatland do not respond to that argument, instead asserting that Mr. Dase's payment of the mortgage in full gave Ms. Kleinatland an expectation that the property would not be subject to a forced sale (doc. 62 at 5), and that under Alabama law a creditor would not be able to force a partition or sale of the property (doc. 61 at 5–6).

Under Alabama law, "[e]ach joint owner has the right to have the property partitioned in kind; or if that cannot be accomplished in an equitable fashion, each has a right to force a sale of the property and a division of the proceeds derived therefrom." *Folsom v. United States*, 306 F.2d 361, 365 (5th Cir. 1962), *abrogated on other grounds by Rodgers*, 461 U.S. 677; *see also Smith v. Smith*, 114 So. 192, 193 (1927) ("Joint owners or tenants in common are entitled as a matter of right to partition in kind, if the lands can be equitably divided, while the right to a sale for division depends upon the fact, which must be averred and proved, that the lands cannot be equitably divided.").

In other words, even if creditors of one joint owner may not force a partition or sale of property, the joint owner himself can force a partition or sale of the property. Thus, Ms. Kleinatland cannot have had a "legally recognized expectation that [the] separate property would not be subject to forced sale by the delinquent taxpayer." *Rodgers*, 461 U.S. at 710–11. To the contrary, Ms. Kleinatland could have forced a partition or sale of the property herself. This factor weighs in favor of the government.

### 3. Third Factor

The third *Rodgers* factor is "the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation described [earlier in the *Rodgers* opinion]." *Rodgers*, 461 U.S. at 711. The Supreme Court

9

described two types of "practical undercompensation" in its decision, neither of which is relevant to the type of property interest at issue in this case. *See id.* at 704 (explaining that the value of a homestead interest may be valued less than the price of an equivalent home and that the cash value of a homestead interest must be based on actuarial statistics relating to life expectancies).

The government contends that this factor weighs in its favor because Ms. Kleinatland does not live on the property, and she would be compensated for her interest in the property. (Doc. 60 at 5). Mr. Dase and Ms. Kleinatland concede that Ms. Kleinatland will not incur any "personal dislocation costs" from a forced sale, but they argue that the government has not presented evidence that she will be adequately compensated because it has not pointed to actuarial computations, proof of the appraised value, or the projected selling price of the property.[3] (Doc. 61 at 6–7; Doc. 62 at 6).

The court finds that this factor weighs in favor of the government. Ms. Kleinatland has not lived on the property since the 1980s, and will not incur any moving costs based on a forced sale. And the cases where actuarial statistics were necessary involved different types of property interests, such as homestead interests, tenancies by the entirety, or life estates. *See Rodgers*, 461 U.S. at 704–05

---

[3] The court will discuss Ms. Kleinatland's argument about her sentimental attachment to the property after addressing the enumerated *Rodgers* factors.

(homestead interest); *United States v. Cardaci*, 856 F.3d 267, 273 (3d Cir. 2017) (tenancy by the entirety); *Anderson*, 2010 WL 5072958, at *4–5 (tenancy by the entirety); *United States v. Johnson*, 943 F. Supp. 1331, 1333 (D. Kan. 1996) (homestead interest).

Unlike the property interests at issue in *Rodgers*, *Cardaci*, *Anderson*, and *Johnson*, Ms. Kleinatland's interest in the property as a joint tenant does not carry with it a right of survivorship. Actuarial statistics are not necessary to compute her exact interest in the property: her interest is one-half. And finally, neither Mr. Dase nor Ms. Kleinatland dispute the government's contention that the property will likely sell for approximately $180,000. Accordingly, the court finds that Ms. Kleinatland will not suffer prejudice in the form of personal dislocation costs or the type of practical undercompensation discussed in *Rodgers*, and this factor weighs in favor of the government.

### 4. Fourth Factor

The fourth *Rodgers* factor is "the relative character and value of the non-liable and liable interests held in the property." *Rodgers*, 461 U.S. at 711. If "the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale[.]" *Id.*

The government contends that this factor weighs in favor of the forced sale because only Mr. Dase lives at the property and Ms. Kleinatland has not indicated

11

that she ever plans to live on the property. (Doc. 60 at 6–7). Ms. Kleinatland contends that her residence on the property is irrelevant (doc. 61 at 7), but the Supreme Court's statements in *Rodgers* about possessory interests indicate otherwise. *See Rodgers*, 461 U.S. at 711. The court finds that, in light of the fact that Mr. Dase is the only owner residing on the property and paid most of the mortgage, this factor weighs in favor of the government.

5. Remaining Factors

The Supreme Court in *Rodgers* noted that its list of factors is not exhaustive. 461 U.S. at 711. In her brief, Ms. Kleinatland argues that the court should consider her sentimental attachment to the land. (Doc. 61 at 6). Although the court is sympathetic to Ms. Kleinatland's position, her sentimental attachment to the land alone cannot outweigh the statutory directive contained in § 7403 that the government may enforce its lien against "any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest." 26 U.S.C. § 7403(a). Ms. Kleinatland has not pointed to any other circumstance that would warrant the court exercising its very limited discretion in this case.

At least three of the enumerated *Rodgers* factors weigh in favor of allowing the forced sale, and in light of the limited evidence presented to the court, the court cannot determine that the remaining factor favors either side. Accordingly, the court

**FINDS** that a forced sale of the entire property is appropriate under these circumstances.

## III. CONCLUSION

The court **GRANTS** the government's motion for entry of a decree of foreclosure and order of sale. The court **FINDS** that the United States has a valid tax lien attaching to Mr. Dase's interest in the property located at 4624 Greensport Road, Ashville, Alabama 35953, as described above, *supra* at 2.

The court **DIRECTS** the government to submit, **on or before March 12, 2020**, a proposed judgment of foreclosure and judicial sale of the property, which sets forth the manner in which the sale proceeds are to be distributed, the publication requirements, bidding procedures, and the manner and time of said sale.

**DONE** and **ORDERED** this February 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE